## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| DAVID LANE JOHNSON<br>2400 Rosewood Lane<br>Edmond, OK  73013,<br><br>      Plaintiff/Movant,<br><br>v.<br><br>NATIONAL FOOTBALL LEAGUE<br>PLAYERS ASSOCIATION<br>1133 20th Street NW<br>Washington, DC  20036<br><br>      and<br><br>NATIONAL FOOTBALL LEAGUE<br>345 Park Avenue<br>New York, NY  10154<br><br>      and<br><br>NATIONAL FOOTBALL LEAGUE<br>MANAGEMENT COUNCIL<br>345 Park Avenue<br>New York, NY  10154,<br><br>      Defendants/Respondents. | Case No. 5:17-cv-00047<br><br>Judge<br><br><br>***Complaint and Petition to Vacate Arbitration Award*** |

## BACKGROUND

Plaintiff/Movant David Lane Johnson ("Johnson") hereby petitions this Court, pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 and Section 10 of the Federal Arbitration Act, 9 U.S.C. § 10, to vacate the October 11, 2016 arbitration award ("Award") issued by James Carter.  This Court should set aside the Award due to substantive and procedural defects that were manifest throughout the arbitral process and the additional reasons below.

In the absence of a substantively and procedurally appropriate arbitration process, the National Football League and the National Football League Management Council (collectively the "NFLMC") breached their obligations under a collectively bargained agreement.  The National Football League Players Association ("NFLPA") also violated its Duty of Fair Representation under the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 et seq., violated the Labor-Management Reporting and Disclosure Act of 1959, and deprived Johnson of the lawful exercise of rights accruing to him under a collectively bargained agreement and under federal labor law.  Finally, Johnson is entitled to equitable and monetary relief and a declaratory judgment, under 28 U.S.C. § 2201, regarding Defendants' multiple breaches and violations.

Johnson further pleads as follows:

## PARTIES

1.      Johnson resides at 2400 Rosewood Lane, Edmond, Oklahoma 73013, and is employed as a professional football player by the National Football League Philadelphia Eagles franchise.

2.      The NFLPA, located at 1133 20th Street, NW, Washington, DC 20036, is an employee organization recognized as the exclusive bargaining representative of professional football players employed by National Football League franchises and regularly does business within this District.

3.      The National Football League, located at 345 Park Avenue, New York, NY 10154, is an unincorporated association of separately owned and operated professional football franchises, which regularly does business within this District.

4.      The National Football League Management Council, located at 345 Park Avenue, New York, NY 10154, is an entity that represents the separately owned and operated

professional football franchises in collective bargaining and labor relations, provides such representation within this District, and regularly does business within this District.

## RELEVANT NON-PARTIES

5.     Adolpho Birch, III ("Birch") is Vice President of Labor Policy & League Affairs for the National Football League and exercised the authority of the National Football League Commissioner under the collectively bargained National Football League Policy on Performance-Enhancing Substances 2015 (the "2015 Policy").

6.     James Carter ("Carter") is an attorney with the law firm of Wilmer Hale and is the arbitrator who presided over Johnson's appeal of the discipline the NFLMC issued him for allegedly violating the 2015 Policy.

7.     Michael D. Levine, M.D. ("Levine") is the independent toxicologist who Johnson retained to observe the "B" sample analysis of his specimen under Section 4.2 of the 2015 Policy.

8.     John A. Lombardo, M.D. ("Lombardo") held the position of Independent Administrator of the 2015 Policy, at all times relevant to the matters raised herein.

## JURISDICTION AND VENUE

9.     This is an action pursuant to: Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185; Section 10 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10; Title I and Title VI of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 401, *et seq.*; and Section 2201 of the Declaratory Judgments Act, 28 U.S.C. § 2201. This Court has subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 185.

10.     The NFLPA represents and derives revenues from its professional football player members who perform services within this District. NFLPA members also reside within this District.

11.     The NFLMC derives revenue from professional football players who perform services within this District, as well as from advertising, ticket sales, merchandising, and broadcast revenue throughout the State of Ohio, and is subject to personal jurisdiction in this District.

12.     In 2016, no fewer than 10 National Football League franchises did business in this District.  Approximately the same number of National Football League franchises does business in this District every calendar year.  For example, the National Football League Hall of Fame Game occurs in Canton, Ohio every year.

13.     The operative facts and violations underlying this litigation, in whole or in part, occurred within this District.

14.     On or about June 23, 2013 to June 29, 2013, while employed by the Philadelphia Eagles NFL franchise, Johnson worked as a professional football player in Aurora, Ohio, which is within this District.

15.     On or about June 23, 2013 to June 29, 2013, in Aurora, Ohio, Johnson received information from the NFLMC and NFLPA concerning performance-enhancing substances and the NFLMC and the NFLPA's collectively bargained policy on performance-enhancing substances.  The NFLMC and NFLPA's policies on performance-enhancing substances are at the core of this litigation and applied and enforced within this District.

-4-

16.     Venue is proper in this Court under 28 U.S.C. § 1391 and 29 U.S.C. § 185, as the National Football League, the National Football League Management Council, and the NFLPA regularly transact business in this District.

## FACTS

I.      **BACKGROUND**

      **a.  Johnson's Terms of Employment**

17.     Johnson has been a professional football player employed by the NFL's Philadelphia Eagles franchise since 2013.

18.     As a professional football player in the National Football League, Johnson is represented by the NFLPA.

19.     The NFLMC manages an association of professional football franchises for purposes of labor management and collective bargaining.

20.     The current Collective Bargaining Agreement ("CBA") negotiated between the NFLMC, on behalf of the National Football League member franchises, and the NFLPA, on behalf of all National Football League players, is in effect from August 4, 2011 until the last day of the 2020 League Year.

21.     Johnson's terms and conditions of employment are governed by the CBA.

22.     In addition to the CBA, Johnson's terms and conditions of employment were governed by the 2015 Policy, a collectively bargained agreement between the NFLPA and the NFLMC concerning performance-enhancing substances.  The 2015 Policy is attached as Exhibit A.

23.     The 2015 Policy was a collectively bargained agreement under Section 104 of the LMRDA.

24.     Section 1 of the 2015 Policy states that:

The Parties … recognize the importance of transparency in the Policy's procedures, including the scientific methodologies that underlie the Policy, the appeals process and the basis for discipline imposed, and reaffirm their commitment to deterrence, discipline and a fair system of adjudication.

Ex. A at p. 2.

25.     Section 3.1 of the 2015 Policy sets forth the specific circumstances under which the NFLMC is permitted to test players for performance-enhancing substances. Specifically, the 2015 Policy allows for testing under the following, mutually exclusive circumstances:  pre-employment, annual, preseason, regular season, postseason, off-season, and for reasonable cause. Ex. A at pp. 5-6.

26.     As set forth in the 2015 Policy:

Players who are placed into the reasonable cause program based on a violation of the Policy must remain in the program for a minimum of two years or two full seasons, whichever is shorter, after which the Independent Administrator must either discharge the Player or notify him in writing that he will remain in the program subject to review at a later date.

Ex. A at p. 6.

27.     Under the 2015 Policy, a player must provide a urine sample when directed to do so and faces discipline for refusing to do so. Ex. A at p. 7.

28.     After a player provides a urine sample under the 2015 Policy, the sample is divided into an "A" sample and a "B" sample. Ex. A at pp. 8-9.

29.     Under the 2015 Policy, if a player's "A" sample tests positive for a prohibited substance, the "B" sample will be tested for the purpose of confirming the positive "A" sample test. Ex. A at pp. 8-9.

30.     Section 4.2 of the 2015 Policy sets forth the procedure for testing the "B" sample. Ex. A at pp. 8-9.

31.    "The 'B' sample analysis will be performed at the same laboratory that did the 'A' sample analysis according to the established analytical procedures and by a technician other than the one performing the 'A' confirmation tests."  Ex. A at p. 9.

32.    A player may choose to have the "B" sample test observed by an independent Observing Toxicologist.  Ex. A at p. 8.

33.    The 2015 Policy states that:

If the "B" sample analysis generates a positive result, and the Chief Forensic Toxicologist certifies that result, the Independent Administrator will provide written notice, together with a copy of the laboratory documentation, to the Player and Parties.

Ex. A. at p. 9.

34.    Appendix B of the 2015 Policy identifies Dr. Bryan Finkle ("Finkle") as the Chief Forensic Toxicologist ("CFT").  Ex. A at p. 27.

35.    Section 6 of the 2015 Policy sets forth the number of regular and postseason National Football League games a player may be suspended, without pay, for specific violations of the 2015 Policy.  Ex. A at pp. 10-11.

36.    Players suspended under Section 6 also forfeit any applicable bonus amounts in accordance with Article 4, Section 9 of the CBA. Ex. A at p. 19.

37.    Sections 9, 10, and 11 of the 2015 Policy set forth the process for appealing discipline issued under the 2015 Policy.  Ex. A at pp. 13-18.

38.    An appeal under the 2015 Policy includes, in part, the following:

a.    "All appeals under Section 6 of this Policy shall be heard by third-party arbitrators not affiliated with the NFL, NFLPA or [NFL franchises]."  Ex. A at p. 13.

b.  "Policy" is defined by the 2015 Policy as "this Policy on Performance-Enhancing Substances."  Ex. A at p. 1.

c.  The NFLMC and the NFLPA had to select "no fewer than three but no more than five arbitrators to act as hearing officers for appeals under Section 6 of this Policy."  Ex. A at p. 13.

d.  The selected group of arbitrators "shall designate one of its members to be the Notice Arbitrator, who also will be responsible for assignment of appeals" and that the "Notice Arbitrator will ensure that at least one arbitrator is assigned to cover every Tuesday of the playing season through the Super Bowl" and that the Notice Arbitrator will develop such schedule before "the first preseason game."  Ex. A at p. 13.

e.  A player may be represented by counsel for his appeal and arbitration. However, the 2015 Policy also states that, "the NFLPA may attend and participate notwithstanding the Player's use of other representation."  Ex. A at p. 16.

f.  In any case involving an alleged violation, the NFLMC "shall have the burden of establishing the Positive Test Result and that it was obtained pursuant to a test authorized under the Policy and was conducted in accordance with the collection procedures and testing protocols of the Policy and the protocols of the testing laboratory (herein collectively 'the Collection Procedures')."  Ex. A at p. 16.

g.  The NFLMC "may establish that a test result was 'positive' by introducing analytical findings provided by the testing laboratory and verified by the Chief Forensic Toxicologist."  Ex. A at p. 16.

h.  A Player "may challenge the initial showing by the Management Council that the result was 'positive' or that it was obtained pursuant to a test authorized under the Policy or was conducted in accordance with the Collection Procedures."  Ex. A at p. 17.

i.  "If the Player alleges a deviation from the Collection Procedures with credible evidence, the Management Council will carry its burden by demonstrating that: (a) there was no deviation; (b) the deviation was authorized by the Parties; or (c) the deviation did not materially affect the accuracy or reliability of the test result."  Ex. A at p. 17.

j.  As part of the appeal, other than bargaining history and information about other players, a player and the NFLMC may make written requests for additional discovery.  Ex. A at pp. 17-18.

k.  As part of the appeal, there is no limitation on the "Players Association's access to appropriate information concerning all violations under the Policy."  Ex. A at p. 18.

39.  The 2015 Policy also requires that the Independent Administrator and the CFT "develop procedures for the handling of NFL Player specimens following laboratory analysis, which procedures shall be subject to approval by the Parties.  These procedures will ensure the destruction of…positive specimens within 30 days of final adjudication of a Player's discipline" ("the Section 16 Procedures"). In addition, once the procedures were developed, the CFT was to

"monitor compliance and promptly report any confirmed or suspected failures to adhere to the retention and destruction procedures."  Ex. A at p. 20.

### b. Johnson's 2014 Discipline under the Policy and Placement in the Reasonable Cause Testing Program

40.     On April 23, 2014, Johnson was tested for performance-enhancing substances under the preceding version of the 2015 Policy then in effect. By letter dated May 19, 2014, Lombardo notified Johnson his test was positive and that he would be placed on "reasonable cause testing, under which [he] may be tested up to twenty-four (24) times per year (July 1st through June 30th)."

41.     By letter dated July 1, 2014, Lombardo notified Birch that Johnson was "subject to both disciplinary action and reasonable cause testing."  By letter dated July 15, 2014, Johnson was notified by Birch that Johnson would be suspended for four games and would remain in "reasonable cause testing."

42.     Johnson served this four-game unpaid suspension during the first four regular season games of the 2014 National Football League season.

43.     From May 19, 2014 through July 11, 2016, a period of more than two calendar years and more than two full National Football League seasons, Johnson was required to submit to "reasonable cause testing" with all of the results being negative.

### c. Johnson's 2016 Testing and Discipline Under the 2015 Policy

44.     On July 11, 2016, after more than two years and two full National Football League seasons in the reasonable cause testing program, Lombardo directed Johnson to submit to another test.  Rather than face discipline for refusing to submit, Johnson provided a urine sample on July 12, 2016, as directed.

-10-

45.     By letter dated July 28, 2016, Lombardo notified Johnson that the "A" sample Johnson provided on July 12, 2016 was allegedly positive.

46.     Johnson timely exercised his right under Section 4.2 of the 2015 Policy and notified Lombardo that Levine would observe the "B" sample test on his behalf.

47.     On August 13, 2016, Levine exchanged emails with Lombardo in preparation for the "B" sample test and requested copies of the testing laboratory's "policy and procedure manual regarding chain of custody, as well as storage and testing of samples prior to my observing, such that I can be familiar with the policies prior to the actual observing of the sample."

48.     On August 15, 2016, Lombardo denied Levine's request for information stating, "No laboratory policy or procedures are made available to the observing toxicologist."  Upon information and belief, the NFLMC instructed Lombardo to deny Levine's request.

49.     On August 17, 2016, Levine responded to Lombardo's refusal to provide the requested information, stating, "your refusal to provide the requested and applicable laboratory policies, protocols, and procedures significantly compromises my ability to effectively observe and evaluate the B sample test."

50.      On August 19, 2016, the "B" sample test took place at the UCLA Olympic Analytical Laboratory in Los Angeles, California ("UCLA Lab").

51.     Levine appeared to observe the "B" sample test on August 19, 2016 and asked UCLA Lab director Dr. Anthony Butch ("Butch") to provide the laboratory policies, protocols, and procedures, including the storage temperature logs for Levine's review prior to the "B" sample test.  Butch made clear that such documents existed, but, like Lombardo, refused to

provide them to Levine.  Upon information and belief, Lombardo and/or the NFLMC instructed Butch not to provide Levine any documents or materials Levine requested.

52.     Upon information and belief, Johnson's "B" sample was not analyzed "by a technician other than the one performing the 'A' confirmation test."  Ex. A at p. 9.

53.     On September 1, 2016, Johnson received an email from Lombardo notifying him that the "B" sample test confirmed the "A" sample positive test. On September 6, 2016, Birch notified Johnson that, due to the positive "B" sample test, Johnson was being suspended without pay for ten (10) games pursuant to the 2015 Policy.

### d.  Under the 2015 Policy, Johnson Appeals the 2016 Discipline to Arbitration

54.     By letter dated September 8, 2016, Johnson timely appealed his 10-game unpaid suspension under the 2015 Policy "and the manner in which the NFL has applied the Policy."

55.     Prior to the arbitration, Johnson sought information directly related to his appeal under the 2015 Policy including, but not limited to, information about arbitrator selection, the Notice Arbitrator, the Collection Procedures, the Section 16 Procedures, the dates and numbers of his reasonable cause tests, the date he was placed in the reasonable cause testing program, and the identity of the CFT.

56.     The NFLMC refused to provide virtually all of the information Johnson requested.

57.     Upon information and belief, after originally scheduling an arbitration with arbitrator Glenn Wong, the NFLMC and NFLPA rescheduled the hearing to be conducted before Carter on October 4, 2016.

58.     Under the 2015 Policy, there were not three arbitrators assigned to hear appeals, none of the existing arbitrators was seated properly, and the Notice Arbitrator was not seated properly.

59.     At no time did Carter disclose to Johnson any conflicts that he or his firm had with respect to Johnson's appeal or any affiliation that he or his firm had "with the NFL, NFLPA or [NFL franchises]."  Ex. A at p. 13.

60.     Due to the NFLMC's refusal to produce virtually all of the information requested by Johnson, Carter held a discovery call and issued a discovery order.  In it, Carter refused to provide Johnson with basic information necessary to assert his defense.

61.     Subsequently, Carter issued a clarification to that discovery order in which he ordered, "If there are any other testing laboratory 'protocols' referenced in the Policy or used by the UCLA lab that were applicable to the testing of samples such as the testing that was done of the sample provided by Mr. Johnson in July 2016, besides the documents contained in the Hearing Binder, the NFL is directed to produce them promptly to Mr. Johnson's counsel and the NFLPA."

62.     Despite Carter's clarification, the NFLMC refused to produce the "testing laboratory 'protocols' referenced in the Policy or used by the UCLA lab that were applicable to the testing of samples such as the testing that was done of the sample provided by Mr. Johnson in July 2016" and falsely claimed that such procedures were already produced.

63.     On October 10, 2016, Carter issued a summary decision denying Johnson's appeal.

64.     On October 11, 2016, Carter issued his written decision denying Johnson's appeal.  This written decision or Award is attached as Exhibit B.

65.     From October 11, 2016 through December 18, 2016, Johnson served his 10-game unpaid suspension.

## II.     THE NFLMC BREACHED ITS DUTIES UNDER THE COLLECTIVELY BARGAINED 2015 POLICY

### a.     The NFLMC Disciplined Johnson Based on an Illegitimate Test Prohibited by the Express Terms of the 2015 Policy

66.     Players placed into the reasonable cause testing program are in the program for "two years or two full seasons," whichever period is shorter.

67.     After a player has been in the reasonable cause testing program for the shorter of two years or two full seasons, the Independent Administrator must either discharge the player from further reasonable cause testing or notify him in writing that he will remain in the program subject to review at a later date.  Ex. A at p. 6.

68.     By letter dated May 19, 2014, Lombardo notified Johnson that he would be placed on reasonable cause testing.

69.     Two years from May 19, 2014 is May 18, 2016.

70.     By letter dated July 1, 2014, Lombardo notified Birch that Johnson was subject to "reasonable cause testing."

71.     Two years from July 1, 2014 is June 30, 2016.

72.     Johnson was subject to reasonable cause testing for two full National Football League seasons -- the 2014-2015 season and the 2015-2016 season. At the latest, the 2015-2016 National Football League season concluded the day after the 2016 Super Bowl -- February 7, 2016.

73.     Prior to Johnson's July 12, 2016 test, Johnson completed the required period for the reasonable cause testing program.

74.     Under Section 3.1 of the 2015 Policy, after Johnson's completion of the required period for the reasonable cause testing program, Lombardo was required to discharge Johnson from the reasonable cause testing program "or notify him in writing that he will remain in the program subject to review at a later date." Ex. A at p. 6.  No such notification occurred prior to Johnson's reasonable cause test on July 12, 2016.

75.     Additionally, Johnson already had been in the reasonable cause testing program for two full calendar years by the time of his reasonable cause test on July 12, 2016.  After having been in the program for two full calendar years and before his improper reasonable cause test on July 12, 2016, Lombardo did not notify Johnson whether he would "remain in the program subject to review at a later date." Ex. A at p. 6.

76.     The July 12, 2016 test to which Johnson was required to submit was not authorized under Section 3.1 of the 2015 Policy.

77.     The NFLMC breached the 2015 Policy by disciplining Johnson for the results of a reasonable cause test that was in violation of the 2015 Policy terms.

### b. The NFLMC Exerted Undue Control and Influence over the Independent Administrator

78.     Section 2.1 of the 2015 Policy creates and establishes the duties and authority of the Independent Administrator.   Ex. A at pp. 2-3.  The Independent Administrator is jointly selected by the NFLMC and the NFLPA, and is responsible, *inter alia*, for directing the administration of all testing for Prohibited Substances under the 2015 Policy.  Ex. A at p. 27. Lombardo was the Independent Administrator at all times relevant to the matters raised herein.

79.     Under Section 2.1 of the 2015 Policy, the Independent Administrator is obligated to function as a neutral party and to act in good faith with equal obligation to the NFLPA and the NFLMC. The 2015 Policy requires the Independent Administrator to report promptly and

contemporaneously all correspondence and relevant information to the NFLPA and the NFLMC, and to seek guidance from both the NFLPA and the NFLMC when exercising responsibilities under the 2015 Policy.  Ex. A at p. 3.

80.     As Independent Administrator, Lombardo is the custodian of documents and information relating to Johnson's performance-enhancing substances testing, including Johnson's private health and medical information.

81.     On September 15, 2016, Johnson emailed Lombardo requesting: (1) all communications Lombardo had ever sent Johnson; (2) any file Lombardo maintained regarding Johnson; and (3) any documents reflecting Johnson's performance-enhancing substances testing history.

82.     On September 15, 2016, Lombardo replied to Johnson's email, copying the NFLMC but not copying anyone from the NFLPA.  Lombardo stated that since Johnson had appealed his discipline, any request for information must go through the NFLMC.  Upon information and belief, the NFLMC directed Lombardo not to provide Johnson the information he requested.

83.     The 2015 Policy does not prohibit the Independent Administrator from communicating with or providing information to players about the 2015 Policy or testing.

84.     The 2015 Policy specifically provides that the Independent Administrator be available for consultation with players.  Ex. A at p. 3.

85.     The NFLMC refused to provide the information regarding Johnson's testing history and the Independent Administrator's communications concerning testing and characterized the requests as "overbroad, irrelevant, unduly burdensome, and beyond the scope of the discovery" permitted in an appeal.

86.     The 2015 Policy prohibits the National Football League, NFLPA, and National Football League Member Clubs from influencing the Independent Administrator.  Ex. A at p. 3.

87.     Upon information and belief, the NFLMC prohibited the Independent Administrator from reporting equally, promptly, and contemporaneously to the NFLPA.  Ex. A at p. 3.

88.     During the discovery call before Carter, the NFLMC stated its communications with the Independent Administrator were attorney-client privileged.  The NFLMC stated that the Independent Administrator became the NFLMC's witness as part of the NFLMC's administration of discipline, including during the appeal proceedings.

89.     Carter denied Johnson access to the NFLMC's communications with the Independent Administrator.

90.     In violation of the 2015 Policy, the NFLMC exerted undue control and influence over the Independent Administrator and took constructive custody and actual control of the Independent Administrator's records concerning Johnson.

### c.    The NFLMC and NFLPA Colluded to Divest Players of the Protections of the Chief Forensic Toxicologist

91.     Section 2.2 of the 2015 Policy creates the CFT position and establishes the position's duties.  Ex. A at pp. 3-4.  The CFT is jointly selected by the NFLMC and the NFLPA, and is responsible, *inter alia*, for auditing the operation of the testing laboratories, consulting with the Independent Administrator and the specimen Collection Vendor, and reviewing and certifying laboratory results as a condition for discipline. The 2015 Policy designates Finkle as the CFT.  Ex. A at p. 27.

92.     Under Section 2.2 of the 2015 Policy, the CFT is obligated to function as a neutral party and to act in good faith with equal obligation to the NFLPA and the NFLMC.  Ex. A at p. 4.

93.     Based upon information and belief, Finkle retired as CFT approximately one year prior to Johnson's July 12, 2016 test.  From the date of Finkle's retirement, no CFT existed per the terms of the 2015 Policy.

94.     The NFLMC refused to provide Johnson with any documentation regarding any "agreement" to deviate from the express terms of the 2015 Policy regarding the CFT position. Likewise, the NFLPA refused to provide Johnson with any documentation regarding any "agreement" to deviate from the express terms of the 2015 Policy regarding the CFT position and indicated it did not have such a document.

95.     Johnson's 2016 test results were never reviewed by the CFT as required by the 2015 Policy.  Therefore, the results are procedurally defective under the 2015 Policy and could not form a valid basis for disciplining Johnson.

      **d.  In Violation of the 2015 Policy, the NFLMC Prohibited Johnson's Observing Toxicologist from Effectively Observing the Testing of Johnson's "B" Sample**

96.     Johnson invoked his right under Section 4.2 of the 2015 Policy to have an independent toxicologist observe the "B" sample analysis. Johnson retained Levine as the Observing Toxicologist for the "B" sample analysis, which occurred on August 19, 2016.

97.     Preceding the "B" sample test, Levine requested policies and procedures of the UCLA Lab. Lombardo rejected Levine's requests.  Upon information and belief, the NFLMC directed Lombardo to reject Levine's requests.

98.     On August 19, 2016, Levine requested the UCLA Lab's policies, protocols, and procedures from Butch.  Like Lombardo, Butch rejected Levine's request, while admitting that such documents existed and were available in the UCLA Lab.  Upon information and belief, Lombardo and/or the NFLMC directed Butch to reject requests made by Levine.

99.     Lombardo's refusal and Butch's refusal to provide pertinent and presumptively relevant documents to Levine denied Levine the ability to effectively witness, monitor, assess, and analyze the testing protocols on Johnson's behalf.

### e.  The NFLMC Denied Johnson Documents Relevant and Necessary to his Appeal and Committed a Fraud on the Arbitrator

100.    Johnson requested that the NFLMC provide a copy of the "protocols of the testing laboratory" referenced in Section 11 of the 2015 Policy.

101.    On September 16, 2016, pursuant to Section 11 of the 2015 Policy, Johnson served the NFLMC with his initial discovery requests.

102.    On September 20, 2016, the NFLMC responded that Johnson's discovery requests were "not contemplated by the Policy," "exceed the proper scope of an appeal hearing," and "clearly are a fishing expedition."

103.    The NFLMC refused to produce virtually all of the information responsive to Johnson's discovery requests, which sought information relevant and necessary to his appeal.

104.    The NFLMC, through Lombardo, refused to provide Levine the policies and procedures Levine requested, which were relevant and necessary to Johnson's appeal.

105.    The NFLMC falsely informed Carter that documents were produced that had not been produced.

106.    The NFLMC falsely informed Carter that the UCLA Lab did not use the World Anti-Doping Agency or WADA procedures, protocols, or policies as it related to Johnson's testing.

## III.    THE NFLPA BREACHED ITS DUTY OF FAIR REPRESENTATION

### a.    The NFLPA Entered into Side Agreements Not Ratified by its Members, as Required by the NFLPA Constitution

107.    The NFLPA has an internal Constitution.  There is nothing in the internal Constitution concerning a player's right to appeal through the NFLPA's internal Constitution.

108.    Any attempt by Johnson to seek redress through internal NFLPA procedures, if any even exist, would have been futile.

109.    Section 6.05 of the NFLPA Constitution requires that to amend the terms of a collectively bargained agreement the proposed amendment "shall be submitted to the Board of Representatives upon recommendation from the Executive Committee."

110.    The "Board of Representatives" is comprised of the player-representatives elected by the players of each of the National Football League franchises.

111.    Failing to require a minimum of three arbitrators without any affiliation to the National Football League or its franchises is a substantive and material deviation from the express terms of the 2015 Policy.

112.    Failing to ensure that the Notice Arbitrator was properly seated is a substantive and material deviation from the express terms of the 2015 Policy.

113.    Failing to ensure that any of the arbitrators are properly seated is a substantive and material deviation from the express terms of the 2015 Policy.

114.    Failing to require the existence of the Collection Procedures or Section 16 Procedures is a substantive and material deviation from the express terms of the 2015 Policy.

115.     Eliminating or effectively eliminating the CFT position was a substantive and material deviation from the express terms of the 2015 Policy.

116.     Redefining the period of time a player can be kept in the reasonable cause testing program is a substantive and material deviation from the terms of the 2015 Policy.

117.     In permitting the numerous substantive deviations from the 2015 Policy, the NFLPA failed to abide by the terms of Section 6.05 of its Constitution, enter into a writing to memorialize the deviations from the express terms of the 2015 Policy, or even notify its membership of the deviations.

   **b.  The NFLPA's Public Dispute with Johnson over the Poor Quality of its Representation Motivated its Bad Faith, Arbitrary, and Capricious Actions**

118.     On August 13, 2016, ESPN published an article in which Johnson was quoted as complaining about the inadequacy of the NFLPA's representation regarding the 2015 Policy.

119.     On August 15, 2016, Philly.com published an Article in which Johnson was quoted as complaining about the failure of the NFLPA to represent him concerning his performance-enhancing substances testing.

120.     ESPN reported that the NFLPA took exception to Johnson's allegations in a statement to the media, quoting: "We always stand up for the rights of our players. Mr. Johnson's statements are factually inaccurate and we have been in touch with both Lane and his agent, who now understand the facts."

121.     The NFLPA's statement that it had contacted Johnson and his agent about the subject of the ESPN article was false.

      **c.**   **The NFLPA Misled Johnson as to its Dealings with the NFLMC,**
            **Failed to Assist Johnson, and Actively Obstructed Johnson's Efforts**
            **to Obtain Information for his Appeal**

122.    In or around late July or early August 2016, Johnson spoke with the NFLPA, about his positive "A" sample test. The NFLPA told Johnson that he should wait and see the results of the "B" sample test before taking other action but that there was not much that could be done.  Around this same time, the NFLPA expressed that Johnson appealing any suspension would be like lighting money on fire.

123.    On September 9, 2016, the NFLPA described the 2015 Policy as a "'strict liability' paradigm," but said "[i]n any case, we will be happy to support your efforts and provide our 'insider' knowledge, which is essential for navigation of this space."

124.    On September 9, 2016, the NFLMC emailed the NFLPA and described Johnson's September 9, 2016 appeal and requests for information as an "attack on the policy." The NFLMC also noted that Johnson was "less than thrilled with the NFLPA" and proposed that the NFLMC and the NFLPA discuss it.

125.    On September 12, 2016, Johnson requested from the NFLPA certain information, including the specimen handling procedures the NFLPA was supposed to have approved under Section 16 of the 2015 Policy.

126.    On September 14, 2016, Johnson requested from the NFLPA a copy of his file regarding all testing, discipline, and the approved procedures for handling player specimens referenced under Section 16 of the 2015 Policy.

127.    On September 15, 2016, the NFLPA provided certain responsive information, and for other requests, stated that no documents existed. The NFLPA also stated that it did not have

documents related to review of the 2015 Policy collection protocols, review of analytical methods, or the actual collection procedures.

128. On September 16, 2016, Johnson requested additional information and documents from the NFLPA, including (1) whether the Section 16 Procedures existed, (2) copies of the NFLPA constitution and bylaws, (3) whether Finkle was still the CFT under the 2015 Policy, (4) a list of specific materials related to the performance-enhancing substances testing, and (5) a request that the NFLPA produce any information in its possession that Johnson had requested from the Independent Administrator.

129. On September 19, 2016, the NFLPA responded to Johnson's September 19, 2016 request and denied the request for information, explaining, "all discovery requests must be directed to the disciplinary entity, which is the NFL, not the NFLPA."

130. On September 19, 2016, the NFLPA admitted that the procedures detailed in Section 16 of the 2015 Policy did not exist and that to the extent they did, the NFLPA neither created nor approved them as required by the 2015 Policy.

131. In response to NFLPA's September 19, 2016 email, on September 21, 2016, Johnson sent a letter to the NFLPA detailing the NFLPA's failure to assist Johnson, the NFLPA's refusal to provide information in the NFLPA's possession to Johnson, and the NFLPA's positions, which were adverse to Johnson, were in bad faith, and arbitrary and capricious.

132. In response, the NFLPA stated that it had already provided Johnson with all of the information that the NFLPA was "permitted to provide once an appeal has commenced." The NFLPA further directed Johnson that all discovery requests should be made to the NFLMC and that the NFLPA would not provide him with information.

133.    On September 25, 2016, Johnson asked for the NFLPA's position on how it interpreted the phrase "full season" set forth in Section 3.1 of the 2015 Policy.

134.    The NFLPA stated that it was the NFLPA's position that a "full season" begins at the beginning of training camp and ends on the day after the Super Bowl.

135.    On September 30, 2016, the NFLPA agreed that Johnson should have been removed from the reasonable cause testing program by the end of the 2015-2016 season and should not have been tested under the reasonable cause testing program in July 2016.

136.    During the arbitration hearing, the NFLPA never offered its support for Johnson on the record.

## IV.    SUBSTANTIVE AND PROCEDURAL DEFECTS IN THE ARBITRATION PROCEEDINGS UNDERMINE THE LEGITIMACY OF THE AWARD

### a.    The NFLMC and the NFLPA Disregarded the Arbitrator Selection Procedures in the 2015 Policy

137.    The 2015 Policy requires the NFLMC and the NFLPA jointly select a panel of "no fewer than three but no more than five arbitrators to act as hearing officers for appeals under Section 6."  Once the full panel of arbitrators is appointed, the 2015 Policy requires that the arbitrators designate one of them as the Notice Arbitrator who is responsible for the assignment of appeals under the 2015 Policy.  Ex. A at p. 13.

138.    At the time of Johnson's appeal, there were only two arbitrators appointed to hear Policy appeals, not the minimum of three required by the 2015 Policy.  Neither of the two arbitrators had been designated as Notice Arbitrator pursuant to the terms of the 2015 Policy.

139.    Johnson's appeal was initially assigned to arbitrator Wong.

140.    On September 20, 2016, the NFLMC notified Johnson, copying the NFLPA, that Wong had "advised the parties" he was not available on the scheduled date and that another arbitrator would hear the appeal.   Wong never communicated with Johnson.

141.    Upon information and belief, communications with Wong were held ex-parte and without prior notification to Johnson.   These communications tainted the impartiality of the arbitration process and raise the specter of impropriety.   Despite requests from Johnson, neither the NFLMC nor the NFLPA have produced documentation of all ex-parte communications with Wong.

142.    On or about September 20, 2016, Johnson was notified by Carter that he would hear Johnson's appeal.

143.    Johnson objected to Carter hearing his appeal.

144.    The selection of Carter did not conform to the provisions of the 2015 Policy.

145.    The Award incorrectly states Carter was properly designated and selected in accordance with the 2015 Policy.

### b.  Carter Disregarded the Pre-Hearing Discovery Provisions of the 2015 Policy

146.    Section 11 of the 2015 Policy explains the pre-hearing discovery process.  Ex. A at p. 17-18.

147.    Pursuant to Section 11 of the 2015 Policy, a player may make requests for discovery.  Ex. A at p. 17.

148.    Section 11 of the 2015 Policy denies a player access to "records, reports or other information concerning other Players or the Policy's bargaining history."   Ex. A at p. 18. However, Section 11 further states that its terms do not limit the NFLPA's access to appropriate

information concerning all violations of the 2015 Policy.  Ex. A at p. 18.  The 2015 Policy contains no other express limitation on the discovery a player may obtain.

149.    On September 16, 2016, pursuant to Section 11 of the 2015 Policy, Johnson submitted initial discovery requests to the NFLMC.

150.    On September 20, 2016, the NFLMC stated that Johnson's information requests were "not contemplated by the Policy," "exceed the proper scope of an appeal hearing," and "clearly are a fishing expedition."

151.    On September 20, 2016, the NFLMC refused to produce any documents beyond those already produced "as part of the laboratory packet contained in the Hearing Binder."

152.    On September 22, 2016, Carter held a discovery telephone conference regarding Johnson's discovery requests.

153.    On September 26, 2016, Carter issued a ruling and, without citation to any express provision of the 2015 Policy, ruled that Section 11 of the 2015 Policy limits discovery to that which is "oriented, at least primarily, to amplification of the matters disclosed in the binder forming the case against him."   Carter's ruling contradicts the permissible scope of discovery clearly permitted under Section 11.

154.    On September 30, 2016, Carter issued a clarification and modification of his September 26 ruling, directing the NFLMC to produce, "any other testing laboratory 'protocols' referenced in the Policy or used by the UCLA lab that were applicable to the testing of samples such as the testing that was done of the sample provided by Mr. Johnson in July 2016, besides the documents contained in the Hearing Binder."

155.    On September 30, 2016, the NFLMC falsely stated that the laboratory protocols had been produced already.  In addition, the NFLMC stated the following: "the UCLA lab is

accredited by other testing organizations and thus is also subject to policies and standards which are not applicable to testing under the National Football League Policy on Performance-Enhancing Substances.  For example, the lab is accredited by WADA, and subject to WADA's International Standard for Laboratories, which Mr. Johnson produced.  We have not produced it because while that document is relevant to testing UCLA performs for WADA, it is irrelevant to testing under the Policy."

156.    During the arbitration hearing on October 4, 2016, Lombardo's testimony made clear that the laboratory protocols Johnson had requested did exist and were utilized in conjunction with Johnson's tests, and contrary to the NFLMC's representation, they had not been included in documents previously produced.

### c.   Carter Disregarded the Burden Shifting Paradigm in the 2015 Policy

157.    Johnson's arbitration was held before Carter on October 4, 2016.  The hearing defied any concept of fundamental fairness.  The hearing also defied "the fair system of adjudication" required by the 2015 Policy.  Ex. A at p. 2.

158.    Section 11 of the 2015 Policy sets forth the burdens and standards of proof for the NFLMC in proving a violation of the 2015 Policy and a player's rights to challenge the proof of the violation.

159.    On September 30, 2016, the NFLMC submitted 12 exhibits on which the NFLMC intended to rely during the hearing to rebut Johnson's basis for appeal.

160.    Notably, one of these exhibits, "Exhibit I," was a one-page summary of Johnson's alleged prior performance-enhancing substances testing dates.

161.    Johnson previously requested all of the underlying documents regarding his testing, including dates of his tests, but the NFLMC denied his request and Carter upheld the NFLMC's refusal to produce this information.

162.    Carter then admitted Exhibit I, over Johnson's objection and despite that Carter previously upheld the NFLMC's refusal to produce documents underlying the information included in Exhibit I, as irrelevant, and Johnson's testimony that the information in Exhibit I was both incomplete and incorrect.

163.    The NFLMC failed to meet its burden of demonstrating a positive test result obtained pursuant to a test authorized under the 2015 Policy and "conducted in accordance with the collection procedures and testing protocols of the Policy and the protocols of the testing laboratory (herein collectively 'the Collection Procedures')."  Ex. A at p. 16.

164.    Because the NFLMC failed to meet this burden and because the test was not authorized under the 2015 Policy, Johnson was entitled to have Carter grant his appeal based on the burden shifting paradigm expressly provided in Section 11 of the 2015 Policy.

165.    The Award renders the express provisions of the 2015 Policy null and void and, by so doing, violated the limitations on Carter's jurisdiction set forth by the 2015 Policy and Section 10 of the FAA.

## V.    CARTER, INCLUDING HIS LAW FIRM WILMER HALE, WAS EVIDENTLY PARTIAL TO THE NFLMC AND CORRUPT

166.    The 2015 Policy requires that "all appeals under Section 6 of this Policy shall be heard by third-party arbitrators not affiliated with the NFL, NFLPA or [NFL franchises]."  Ex. A at p. 13.

167.    Upon information and belief, at the time of Johnson's appeal, Carter was otherwise affiliated with the National Football League and the NFLPA by virtue of his position

as an arbitrator under the National Football League and NFLPA's wholly separate policy titled, "National Football League Policy and Program on Substances of Abuse 2015."

168.    Upon information and belief, there was no writing in which the NFLMC and NFLPA agreed to modify the 2015 Policy concerning Section 9 of the 2015 Policy.

169.    Regardless, the 2015 Policy contains no mechanism to alter its terms.

170.    Carter works for the law firm of Wilmer Hale.

171.    Upon information and belief, Wilmer Hale has and does represent the NFLMC and National Football League franchises.

172.    Upon information and belief, Wilmer Hale was retained by the National Football League to investigate the National Football League's handling of the Ray Rice domestic violence situation.

173.    Upon information and belief, the National Football League retained Wilmer Hale on September 10, 2014.

174.    A key witness in that investigation was Birch.

175.    Wilmer Hale ultimately exonerated the National Football League relative to its handling of the Ray Rice situation and specifically Birch's conduct.

176.    Upon information and belief, that investigation involved interviewing over 200 National Football League employees, reviewing over 3 million documents, and imaging Birch's electronic devices.

177.    During that investigation, Wilmer Hale reported to the owners of National Football League franchises Pittsburgh Steelers and New York Giants.

178.    The investigation of the National Football League's conduct relative to Ray Rice ended on January 8, 2015.

179.    Upon information and belief, the National Football League paid Wilmer Hale in excess of a million dollars for its efforts related to the investigation.

180.    Upon information and belief, shortly after the conclusion of Wilmer Hale's investigation, Birch sent a letter to Carter at Wilmer Hale inviting him to serve as an arbitrator under both the then current National Football League Policy on Performance-Enhancing Substances and the then current National Football League Policy and Program on Substances of Abuse.  At the time of Johnson's arbitration, Carter remained an arbitrator under both of the then applicable policies.

181.    Upon information and belief, Wilmer Hale has provided other services to the National Football League and its franchises.

182.    Prior to the arbitration in this matter, Carter never disclosed to Johnson any affiliation that either he or his firm had with the NFLPA, the National Football League, or any National Football League franchise.

183.    Carter is otherwise "affiliated with the NFL, NFLPA or [NFL franchises]."

**FIRST CAUSE OF ACTION**
**Vacatur of the Award pursuant to the LMRA § 301**
**Because it Fails to Draw its Essence from the Agreement**

184.    Johnson incorporates by reference the averments of the preceding paragraphs, as if fully restated herein.

185.    Carter's Award is illegitimate because it does not draw its essence from the collectively bargained agreement (i.e., the 2015 Policy).

186.    Carter failed to apply the burden shifting paradigm expressly provided for in the 2015 Policy.

187.    Carter denied Johnson access to relevant information without bases or authorization in the 2015 Policy.  Carter's rulings on discovery ignored the 2015 Policy's express provisions entitling Johnson to information critical to mounting an effective defense and preserving his contractual rights.

188.    Because of Carter's failure to adhere to the discovery and burden shifting paradigms expressly provided in the 2015 Policy, the Award cannot be said to arguably construe or apply the 2015 Policy. Carter's Award conflicts with express terms of the 2015 Policy.

189.    The arbitral discovery and hearing procedures were so errant as to amount to affirmative misconduct and to deny Johnson the fundamentally fair adjudication expressly guaranteed in the 2015 Policy.

190.    Carter's Award conflicts with the express terms of the 2015 Policy, imposed additional requirements and limitations on Johnson that were not expressly provided for in the 2015 Policy and that are not rationally supported by or derived from the 2015 Policy, and improperly reflects Carter's own brand of industrial justice.

191.    The Award is contradictory to the 2015 Policy's commitment to "transparency in the Policy's procedures, including the scientific methodologies that underlie the Policy, the appeals process and the basis of discipline imposed" and to Defendants' claimed commitment to "a fair system of adjudication."  Ex. A at p. 2.

192.    The Award has resulted in serious, substantial, material harm to Johnson and his rights and interests.

## SECOND CAUSE OF ACTION
### Vacatur of the Award pursuant to the LMRA § 301
### Because the Arbitration Process was Fundamentally Unfair

193.    Johnson incorporates by reference the averments of the preceding paragraphs, as if fully restated herein.

194.    The NFLPA and the NFLMC, individually and in collusion, deliberately withheld relevant and pertinent information from Johnson in order to impede his ability to mount his appeal effectively.

195.    The NFLPA and NFLMC, individually and in collusion, deliberately concealed information related to the arbitrators under the 2015 Policy and disregarded the arbitrator selection process.

196.    The NFLPA and NFLMC, individually and in collusion, deliberately concealed from Johnson their failure to satisfy their obligation to establish and/or approve the procedures detailed in Section 16 of the 2015 Policy.

197.    The NFLMC and NFLPA, individually and in collusion, deliberately and repeatedly refused to provide Johnson with deviations from substantive provisions of the 2015 Policy.

198.    Johnson improperly was refused discovery under Section 11 of the 2015 Policy critical to mounting an effective defense.

199.    The Award is contradictory to the 2015 Policy's requirement of "a fair system of adjudication."  Ex. A at p. 2.

200.    The Award has resulted in serious, substantial, material harm to Johnson and his rights and interests.

## THIRD CAUSE OF ACTION
### Vacatur of the Award pursuant to the FAA § 10(a)(1)
### Because the Award Was Procured by the NFLMC and the NFLPA
### through Corruption, Fraud, or Undue Means

201.    Johnson incorporates by reference the averments of the preceding paragraphs, as if fully restated herein.

202.    The NFLMC misled Johnson and Carter as to the existence of the testing laboratory protocols referenced throughout the 2015 Policy.

203.    The NFLMC misled Johnson and Carter as to the claimed production of the protocols referenced in the 2015 Policy or used by the UCLA Lab, as the NFLMC did not produce these documents.

204.    The NFLMC misled Johnson and Carter when it stated that World Anti-Doping Agency or WADA procedures, protocols, or policies did not apply to Johnson's tests.

205.    Upon information and belief, the NFLMC further misled Johnson and Carter when it claimed there was a written agreement regarding the CFT.

206.    Despite refusing to produce documents regarding Johnson's prior performance-enhancing substances testing history, claiming such documents were irrelevant, the NFLMC submitted Exhibit I during the hearing on October 4, 2016.  Exhibit I was both incomplete and inaccurate.

207.    Upon information and belief, the NFLMC misled Johnson and Carter in other ways.

208.    The NFLMC improperly procured the Award through corrupt, fraudulent, and undue means.

209.    The Award has resulted in serious, substantial, material harm to Johnson and his rights and interests.

**FOURTH CAUSE OF ACTION**
**Vacatur of the Award pursuant to the FAA § 10(a)(2)**
**Because there was Evident Partiality or Corruption in the Arbitrator**

210.    Johnson incorporates by reference the averments of the preceding paragraphs, as if fully restated herein.

211.    Carter was not properly seated as an arbitrator per the 2015 Policy.  Carter and his firm are otherwise affiliated with the NFLPA, the National Football League, and National Football League franchises.

212.    Carter failed to disclose to Johnson any potential conflict of interest prior to Johnson's arbitration nor did he disclose any potential conflicts that he or his firm had.

213.    Carter's refusal to force the NFLMC to produce material and relevant information permitted by the 2015 Policy (including but not limited materials and information related to Johnson's testing information and his placement into the reasonable cause testing program) essential to Johnson's defense demonstrates his partiality or corruption in violation of 9 U.S.C. Section 10(a)(2).

214.    Carter's refusal to take a negative inference for the NFLMC's refusal to produce information he ordered produced demonstrates his partiality or corruption in violation of 9 U.S.C. Section 10(a)(2).

215.    Carter's refusal to follow the burden shifting paradigm set forth in the 2015 Policy demonstrates his partiality or corruption in violation of 9 U.S.C. Section 10(a)(2).

216.    Carter's refusal to require the NFLMC to provide actual evidence of a CFT agreement demonstrates his partiality or corruption in violation of 9 U.S.C. Section 10(a)(2).

217.    Carter's reliance upon Exhibit I in his Award demonstrates his partiality or corruption in violation of 9 U.S.C. Section 10(a)(2).  This is especially true given that Carter

-34-

denied Johnson's request for the information contained in Exhibit I, including documents underlying the information contained in Exhibit I, via discovery.

218.    The Award has resulted in serious, substantial, material harm to Johnson and his rights and interests

**FIFTH CAUSE OF ACTION**
**Vacatur of the Award pursuant to the FAA § 10(a)(3)**
**Because of Arbitrator Misconduct in Refusing to Hear Evidence Pertinent and Material to the Controversy and Other Misbehavior by which Johnson's Rights Were Prejudiced**

219.    Johnson incorporates by reference the averments of the preceding paragraphs, as if fully restated herein.

220.    Carter violated the express terms of Section 11 of the 2015 Policy by unduly restricting the scope of evidence available to Johnson for his appeal.

221.    Carter's refusal to compel the NFLMC to produce documents critical to Johnson's appeal, including, but not limited to, documents related to his testing history, the date of his placement in the reasonable cause testing program, and, ultimately, the testing laboratory protocols deprived Johnson of a fundamentally fair hearing.

222.    Carter refused to require the NFLMC to produce the alleged agreement regarding the CFT, but accepted, at face value, the NFLMC's bald non-evidentiary statement that such an agreement existed.

223.    After ordering the NFLMC to produce the relevant laboratory protocols and hearing testimony conclusively demonstrating that such protocols did exist, Carter improperly still refused to force the NFLMC to produce the subject laboratory protocols or to take a negative inference related the NFLMC's refusal to comply Carter's order requiring the NFLMC to produce them.

224.     Carter failed to adhere to and ultimately ignored the burden shifting paradigm in the 2015 Policy.

225.     As a result of Carter's exclusion of relevant and pertinent evidence material to the controversy and failure to adhere to the express procedural provisions of the 2015 Policy, Johnson was denied a fundamentally fair hearing and was instead subjected to an arbitration scheme so deeply flawed as to forever preclude the possibility of a fair outcome.

226.     The Award has resulted in serious, substantial, material harm to Johnson and his rights and interests.

### SIXTH CAUSE OF ACTION
**Vacatur of the Award pursuant to the FAA § 10(a)(4)**
**Because the Arbitrator Exceeded His Authority under the 2015 Policy**

227.     Johnson incorporates by reference the averments of the preceding paragraphs, as if fully restated herein.

228.     Carter was improperly seated, designated, and/or assigned to hear Johnson's appeal and lacked proper authority to do so.

229.     Carter failed to allow Johnson access to relevant documents and information to which he was entitled under the 2015 Policy.

230.     Carter failed to require the NFLMC to produce reliable, authenticated evidence, including, but not limited to, alleged agreements to deviate from the express terms of the 2015 Policy and based his ruling on non-evidentiary statements.

231.     Carter failed to grant Johnson's request for an adverse inference to which he was entitled under the 2015 Policy; namely, that the failure of the NFLMC to produce protocols, procedures, and/or policies necessitated a finding that the protocols, procedures, and/or policies were not followed.

232.    Carter failed to adhere to the burden shifting paradigm required by the 2015 Policy.

233.    Carter failed to take a negative inference against the NFLMC for its refusal to produce documents, including, but not limited to, the Collection Procedures detailed in the 2015 Policy.

234.    Carter permitted the NFLMC to introduce evidence exclusively on rebuttal that the 2015 Policy required the NFLMC to introduce as part of its case-in-chief.

235.    Carter admitted Exhibit I into the arbitration record and relied heavily on it in his Award, despite denying Johnson's discovery requests for the information contained in Exhibit I, including underlying documentation, without authority in the Policy to do so.

236.    Carter improperly limited the testimony of witnesses with actual knowledge of the facts underlying Johnson's arbitration.  For example, Carter impermissibly precluded testimony concerning when Johnson was placed in the reasonable cause testing program.

237.    The Award has resulted in serious, substantial, material harm to Johnson and his rights and interests.

## SEVENTH CAUSE OF ACTION
### Breach of Contract by the NFLMC pursuant to LMRA § 301

238.    Johnson incorporates by reference the averments of the preceding paragraphs, as if fully restated herein.

239.    Johnson's July 12, 2016 test violated the 2015 Policy.

240.    The NFLMC violated the 2015 Policy by not appointing the required minimum number of arbitrators.

241.    The NFLMC violated the 2015 Policy by failing to seat properly an arbitrator to hear Johnson's appeal.

242.    The NFLMC violated the 2015 Policy by not having Johnson's test results verified by the CFT.

243.    The NFLMC violated the 2015 Policy by refusing to provide Johnson with the Collection Procedures, including, but not limited to, the testing laboratory protocols.

244.    The NFLMC violated the 2015 Policy by prohibiting the Independent Administrator from providing documents in the Independent Administrator's control and custody concerning Johnson's personal health, medical, and testing information to Johnson.  The NFLMC violated the 2015 Policy by prohibiting the Independent Administrator from providing Levine the documents Levine requested.

245.    The NFLMC violated the 2015 Policy by prohibiting the Independent Administrator from reporting equally, promptly, and contemporaneously with the NFLPA.

246.    The NFLMC violated the 2015 Policy by eliminating or effectively eliminating the CFT position or otherwise failing to abide by requirements related to the CFT.

247.    The NFLMC violated the 2015 Policy by refusing to provide or directing its agents not to provide materials necessary for Levine to observe effectively the "B" sample test.

248.    The NFLMC violated the 2015 Policy by not establishing the procedures set forth in Section 16 of the 2015 Policy or otherwise abiding by the terms of the 2015 Policy.

249.    The NFLMC's actions have resulted in serious, substantial, material harm to Johnson and his rights and interests.

**<u>EIGHTH CAUSE OF ACTION</u>**
**Breach of Duty of Fair Representation by the NFLPA**
**pursuant to the LMRA § 301 and NLRA § 8(b)**

250.    Johnson incorporates by reference the averments of the preceding paragraphs, as if fully restated herein.

251.    The NFLPA abdicated its statutory responsibility to provide Johnson with information in its possession relevant to Johnson's appeal.

252.    The NFLPA coerced Johnson to waive his rights under the 2015 Policy, including his right to appeal pending discipline.

253.    The NFLPA willfully and fraudulently misled Johnson as to its communications with the NFLMC regarding application of the 2015 Policy terms upon which Johnson based his appeal.

254.    The NFLPA refused to enforce the express arbitrator selection provisions of the 2015 Policy and/or colluded in the NFLMC's breach of those provisions.

255.    The NFLPA allowed and/or colluded in the NFLMC's elimination or effective elimination of the CFT position and its failure to abide by the 2015 Policy's requirements related to the CFT, without executing a written agreement and without notifying Johnson or other National Football League players.

256.    The NFLPA allowed and/or colluded in the NFLMC's assertion of unilateral control over Johnson's personal medical and health information and testing history under the 2015 Policy.

257.    The NFLPA allowed and/or colluded in the NFLMC's unilateral exercise of control over performance-enhancing substances testing and the appeals process in a manner far outside the range of reasonableness for the behavior of an exclusive bargaining representative.

258.    The NFLPA allowed and/or colluded in the NFLMC's exclusive exercise of control of the Independent Administrator.

259.    The NFLPA allowed and/or colluded in the NFLMC's prohibiting the Independent Administrator from reporting equally, promptly, and contemporaneously with the NFLPA.

260.    The NFLPA retaliated against Johnson because of its public dispute with Johnson over the poor quality of the NFLPA's representation.  The NFLPA did so out of personal animosity, by abdicating its representative duties and abandoning Johnson to the caprice of the NFLMC.

261.    The NFLPA failed to review the documentation of Johnson's performance-enhancing substances test results prior to the close of the five-day period in which Johnson had a right to appeal his discipline.

262.    The NFLPA failed to audit or monitor compliance with the 2015 Policy, as it is required to do by the 2015 Policy.

263.    The NFLPA attended but provided no affirmative support, assistance, or counsel to Johnson in the course of the September 22, 2016 telephone conference concerning discovery disputes with Carter.

264.    The NFLPA attended but provided no affirmative support, assistance, or counsel to Johnson in the course of the October 4, 2016 arbitration hearing.

265.    The NFLPA did nothing to protect the rights of players, including Johnson, from being arbitrarily retained in the reasonable cause testing program beyond the limits contemplated in the 2015 Policy.

266.    By its actions and failures to act, the NFLPA has deprived Johnson of all avenues of meaningfully protecting his interests and effectively abandoned him.

267.    The NFLPA handled Johnson's appeal in a perfunctory manner.

268.     The NFLPA acted disloyally, in bad faith, and arbitrarily and capriciously. The NFLPA's actions were so far outside the widest range of reasonableness for a union's conduct such that the NFLPA's actions were irrational.

269.     The NFLPA's actions have resulted in serious, substantial, material harm to Johnson and his rights and interests.

### NINTH CAUSE OF ACTION
### Violations of the LMRDA against the NFLPA

270.     Johnson incorporates by reference the averments of the preceding paragraphs, as if fully restated herein.

271.     The NFLPA refused to abide by the Bill of Rights of Union Member under the LMDRA by depriving Johnson of his right to receive and inspect the operative collectively bargained agreement.

272.     The NFLPA and NFLMC both have claimed to have modified substantive provisions in the 2015 Policy affecting the terms and conditions of Johnson's employment and the employment of all other active-player members of the NFLPA.

273.     The NFLPA has refused to share with Johnson these purported modifications to the collectively bargained 2015 Policy.

274.     The purported modifications to the 2015 Policy directly affect significant rights afforded Johnson and all members of the NFLPA.

275.     The NFLPA refused to provide Johnson with all the side agreements, modifications, deviations, etc. to the 2015 Policy, which are part of the collectively bargained agreement.

276.     To this day, the NFLPA has not apprised Johnson of the entirety of the terms of the 2015 Policy.

277.    The NFLPA disciplined or otherwise retaliated against Johnson for asserting his rights under the LMRDA.

278.    The NFLPA's actions have resulted in serious, substantial, material harm to Johnson and his rights and interests.

### TENTH CAUSE OF ACTION
### Request for Declaratory Judgment under 28 U.S.C. § 2201

279.    Johnson incorporates by reference the averments of the proceeding paragraphs, as if fully restated herein.

280.    Johnson's July 12, 2016 test violated the express terms of the 2015 Policy.

281.    The 2015 Policy expressly requires that Defendants maintain no fewer than three arbitrators to hear appeals.

282.    The 2015 Policy expressly requires that one of the arbitrators is designated as the "Notice Arbitrator" and that the Notice Arbitrator assign arbitrators to cover every Tuesday of the playing season through the Super Bowl.

283.    Upon information and belief, there were fewer than three arbitrators to hear appeals under the 2015 Policy.

284.    Upon information and belief, there was not a properly seated Notice Arbitrator as required by the express written terms of the 2015 Policy.

285.    Upon information and belief, arbitrators were not assigned to hear appeals per the express written terms of the 2015 Policy.

286.    A real and justiciable controversy exists between Johnson on one hand and the Defendants on the other concerning whether the Defendants ongoing failure and/or refusal to comply with the arbitrator appointment and assignment terms of the 2015 Policy breaches the 2015 Policy.

287.    A real and justiciable controversy exists between Johnson on one hand and Defendants on the other concerning his rights under the 2015 Policy.

288.    Defendants breach of the 2015 Policy caused significant loss of income and due process rights to Johnson and denied Johnson protections to which he was entitled.

289.    Pursuant to 28 U.S.C. § 2201, Johnson is entitled to a declaratory judgment that:

    a.  Johnson's July 12, 2016 test violated the express terms of the 2015 Policy, and the NFLMC cannot discipline Johnson for this unauthorized and improper July 12, 2016 test;

    b.  Defendants violated the 2015 Policy's requirements regarding appointment and assignment of arbitrators;

    c.  Defendants did not properly seat any arbitrators under the 2015 Policy and that all decisions by such purported arbitrators are null and void;

    d.  Defendants did not seat properly Carter to hear Johnson's appeal;

    e.  Carter was not designated properly to hear Johnson's appeal;

    f.  Defendants did not properly seat a Notice Arbitrator under the 2015 Policy;

    g.  Defendants did not provide Johnson with information that he was entitled to under the 2015 Policy;

    h.  Defendants improperly eliminated or effectively eliminated the CFT position;

    i.  Defendants did not approve, have, or create the Section 16 Procedures required by the 2015 Policy; and

    j.  Defendants arbitrarily and capriciously administered the 2015 Policy to

-43-

the detriment of all National Football League players.

## **PRAYER FOR RELIEF**

Johnson prays for the following relief:

    a.  The declaratory judgment detailed above;

    b.  A judgment in Johnson's favor as to all the causes of action included herein;

    c.  A judgment granting Johnson's petition to vacate the Award;

    d.  Removal of Johnson from the National Football League Policy on Performance-Enhancing Substances' reasonable cause testing program;

    e.  Return of Johnson to the discipline step or position he was in under the National Football League Policy on Performance-Enhancing Substances prior to Birch's September 6, 2016 discipline letter;

    f.  Compensation for the damages Johnson has suffered or will suffer as a result of Defendants' actions as described herein and the Award, which exceeds $75,000.00;

    g.  Reversal of any damages caused by the improper Award, including, but not limited to, reinstatement of Johnson's contractual guarantees set forth in his NFL Player Contract;

    h.  Punitive damages;

    i.  A judgment requiring Defendants to pay Johnson's costs and attorneys' fees associated with the underlying appeal of Johnson's discipline;

    j.  A judgment requiring Defendants to pay Johnson's costs and attorneys' fees associated with this litigation; and

k.   Any other legal or equitable relief, which this Honorable Court deems just, equitable, and proper.

Respectfully submitted,

**ZASHIN & RICH CO., L.P.A.**

*s/ Stephen S. Zashin*
**Stephen S. Zashin - OH #0064557**
  ssz@zrlaw.com
**Patrick J. Hoban - OH #0079794**
  pjh@zrlaw.com
**David R. Vance - OH #083842**
  drv@zrlaw.com
Ernst & Young Tower
950 Main Avenue, 4th Floor
Cleveland, OH  44113
Telephone: (216) 696-4441
Facsimile: (216) 696-1618

***Attorneys for Plaintiff/Movant,***
***David Lane Johnson***