## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| DAVID LANE JOHNSON, | ) | Case No. 5:17-cv-00047 |
| | ) | |
| Plaintiff/Movant, | ) | Judge |
| | ) | |
| v. | ) | |
| | ) | |
| NATIONAL FOOTBALL LEAGUE | ) | ***Plaintiff/Movant David Lane Johnson's*** |
| PLAYERS ASSOCIATION, ET AL., | ) | ***Memorandum in Support of his Motion to*** |
| | ) | ***Vacate an Arbitration Award under the*** |
| Defendants/Respondents. | ) | ***Federal Arbitration Act, 9 U.S.C. §§ 1-16*** |

## I.    INTRODUCTION

The October 11, 2016 arbitration Award issued by James Carter ("Arbitrator") upholding the imposition of a 10-game unpaid suspension against David Lane Johnson ("Johnson") was the product of a fatally flawed and biased arbitration process.  By any reasonable measure, the entire process was a "sham."  Plaintiff/Movant David Lane Johnson's Complaint and Petition to Vacate Arbitration Award ("Complaint") contemporaneously filed with this Court (ECF #: 1) is attached as Exhibit 1.  The Award is attached as Exhibit 2.[1]

The National Football League Policy on Performance-Enhancing Substances 2015 ("2015 Policy"), under which Johnson's arbitration was conducted, establishes specific provisions safeguarding Johnson's pre-hearing rights to fair treatment and adjudication.  The 2015 Policy states, in relevant part:

> The Parties … ***recognize the importance of transparency*** in the Policy's procedures, including the scientific methodologies that under lie the Policy, the appeals process and the basis for discipline imposed, and reaffirm their ***commitment to*** deterrence, discipline and ***a fair system of adjudication***.

---

[1] Personal and confidential information concerning Johnson that is immaterial to this Motion is redacted from the attached exhibits.  Upon request, Johnson will provide unredacted versions of any of the attached exhibits, to the Court for *in camera* review.  Johnson also can provide copies of the record exhibits to the arbitration hearing. Defendants already have unredacted copies of all these documents.

*See* Exhibit 3 (2015 Policy) at p. 3 (emphasis added).  However, Johnson's appeal process, including arbitration, was neither transparent nor fair.

The National Football League Management Council, the National Football League (collectively referred to as the "NFLMC"), and the National Football League Players Association ("NFLPA"), with the cooperation of the Arbitrator, denied Johnson access to relevant documents and express procedural safeguards set forth in the 2015 Policy.  Furthermore, the Arbitrator's conduct of the pre-hearing discovery process and the arbitration hearing defied basic principles of impartiality.  By these acts, the NFLMC, the NFLPA, and the Arbitrator denied Johnson his right to "transparency" and the "fair system of adjudication" guaranteed by the 2015 Policy.

The 2015 Policy entitled Johnson to information relevant to his appeal of discipline.  The NFLPA, Johnson's own union, and the NFLMC denied him access to that information in violation of the 2015 Policy, and the Arbitrator endorsed these improper denials.  The Arbitrator's misconduct also included pre-hearing rulings and rulings during the arbitration hearing that restricted Johnson's access to information in violation of the terms of the 2015 Policy.  The Arbitrator even refused to enforce his own orders requiring the NFLMC to produce documents.  *See* Exhibit 4 (Johnson's Discovery Requests),[2] Exhibit 5 (the NFLMC's Response to Johnson's Discovery Requests), Exhibit 6 (Pre-Hearing Discovery Conference Call Transcript), Exhibit 7 (Arbitrator's Discovery Ruling), Exhibit 8 (Arbitrator's Clarification of Discovery Ruling, including the NFLMC's Response), and Exhibit 9 (Arbitration Transcript).

---

[2] Johnson's initial discovery requests were submitted to "Arbitrator Glenn Wong" based on the NFLMC's pronouncement that Wong would hear the dispute.  However, the NFLMC and the NFLPA unilaterally, and without input or prior notice to Johnson, reassigned the hearing to Carter. Ex. 1 at ¶¶ 139-142.

Furthermore, the Arbitrator was not properly seated or assigned to hear Johnson's appeal under the terms of the 2015 Policy.  Furthermore, subsequent to the arbitration hearing leading to the Award, Johnson discovered that, in violation of the 2015 Policy, the arbitrator and his law firm were affiliated with and performed significant services for the NFLMC and the National Football League.  The Arbitrator never made any conflict disclosure to Johnson.  Ex. 1 at ¶ 59.

In violation of the 2015 Policy, the Arbitrator exceeded his authority and manufactured restrictions on information to which Johnson had access.  Indeed, after denying Johnson's specific requests for information regarding his testing history under the Policy on grounds that it was "irrelevant," the Arbitrator admitted the NFLMC's submission of a summary of said testing history (i.e., "Exhibit I") into the record over Johnson's objections.  In the Award, the Arbitrator then relied almost exclusively on the NFLMC's summary of Johnson's "irrelevant" testing history to deny a key element of Johnson's grievance.  Exacerbating the NFLMC's and NFLPA's stonewalling, the Arbitrator's actions unfairly denied Johnson any meaningful ability to either make his case or rebut the NFLMC's case in chief.

On multiple occasions, the Arbitrator relied on unauthenticated, unsupported, and/or demonstrably false statements by the NFLMC rather than evidence to render his decisions.  The Arbitrator blithely accepted the NFLMC's statement that the 2015 Policy had been amended to eliminate a neutral review of Johnson's urine testing results by the "Chief Forensic Toxicologist" -- a substantive right.  Despite Johnson's repeated requests that the Arbitrator require the NFLMC to produce the purported agreement, the Arbitrator accepted the NFLMC's bald assertion as to the existence of such an agreement and its terms without ever setting eyes upon or hearing sworn testimony about it, or even requiring the NFLMC to produce it to Johnson.

The Arbitrator failed to enforce the 2015 Policy's express and specific "burden shifting" paradigm on the NFLMC.  Instead, he exceeded his authority and allowed the NFLMC to avoid meeting its evidentiary burden as set forth in the 2015 Policy.

As set forth herein and in the Complaint, the myriad of frauds, falsehoods, procedural and substantive violations, and deceptions perpetrated by the NFLMC, the NFLPA, and the Arbitrator render the Award the product of fraud, bias, and partiality.  The Arbitrator's refusal to abide by the 2015 Policy's terms by denying Johnson access to plainly relevant information, while relying on the same information to deny Johnson's appeal, confounds the 2015 Policy's commitment to a "fair system of adjudication."  The Arbitrator's actions exceeded his authority under the 2015 Policy to the prejudice of Johnson's rights and to the benefit of the NFLMC.

Based on the averments in the Complaint, the attached exhibits, and applicable law, Johnson respectfully requests that this Court vacate the Award under Sections 10(a)(1), (2), (3), and (4) of the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA").

## II.     RELEVANT FACTS

Johnson incorporates the averments in the Complaint as the facts upon which he bases his Motion to Vacate.  See, Ex. 1 at ¶¶ 1-183.

## III.    LAW AND ARGUMENT

Judicial review of a labor arbitration decision under the FAA is limited.  *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001).  However, the degree of judicial deference owed an arbitrator "does not grant carte blanche approval" to every arbitral award. *Int'l Bhd. of Firemen & Oilers, Local 261 v. Great N. Paper Co.,* 765 F.2d 295 (1st Cir. 1985).  When an "arbitrator strays from interpretation and application of the agreement and effectively 'dispenses his own brand of industrial justice,' … his decision may be unenforceable."  *Major*

*League Baseball Players Ass'n*, 532 U.S. at 509 (citing *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S. Ct. 3058 (1960)).

An arbitrator's award is only legitimate "so long as it draws its essence from the collective bargaining agreement. *Mich. Family Res., Inc. v. SEIU Local 517M*, 475 F.3d 746, 751 (6th Cir. 2007) (quoting *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599 (1960)).  When an arbitrator's words manifest a breach of the obligation to interpret and apply the collective bargaining agreement, "courts have no choice but to refuse enforcement of the award."  *USW v. Roemer Indus.*, 68 F. Supp. 2d 843, 846 (N.D. Ohio 1999). The Sixth Circuit has recognized the "specter that an arbitration decision could be so ignorant of the contract's plain language … as to make implausible any contention that the arbitrator was construing the contract."  *Mich. Family Res., Inc.*, 475 F.3d at 753 (internal quotes omitted).  An arbitrator's interpretation of a contract could be "so untethered to the terms of the agreement … that it would cast doubt on whether the arbitrator was engaged in interpretation."  *Id*.

Federal courts have authority to vacate an arbitration award in situations that "seriously undermine the integrity of the arbitral process. . . ."  *Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1353 (6th Cir. 1989) (citing *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 567 (1976)). An arbitration award can be vacated under the FAA in four situations:

> (1)    where the award was procured by corruption, fraud, or undue means;
>
> (2)    where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3)    where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4)    where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*Samaan v. Gen. Dynamics Land Sys.,* 835 F.3d 593, 600 (6th Cir. 2016) (quoting 9 U.S.C. §

10(a)(1)-(4)). In this case, the entire arbitration process was corrupted by deception, fraud,

obfuscation, and such regular violation of the express terms of the 2015 Policy by the NFLMC,

the NFLPA, and the Arbitrator that the Award is an exemplar for vacatur under the FAA.

### A.   The Award Was Procured Through the NFLMC's Corruption, Fraud, and Other Undue Means and Should Be Vacated

Federal courts are empowered to vacate an arbitration award that "was procured by

corruption, fraud, or undue means." 9 U.S.C. § 10(a)(1). To vacate an award under §10(a)(1),

the movant must demonstrate (1) clear and convincing evidence of the corruption, fraud, or

undue means, (2) that it materially relates to an issue involved in the arbitration, and (3) that due

diligence would not have prompted its discovery during or prior to the arbitration. *Molten Metal*

*Equip. Innovations, Inc. v. Pyrotek, Inc.,* 2010 U.S. Dist. LEXIS 64238 (N.D. Ohio June 29,

2010) (citing *Int'l Bhd. of Teamsters, Local 519 v. UPS,* 335 F.3d 497, 503 (6th Cir. 2003)).

Courts have interpreted the 'undue means' language of the Act as requiring some type of bad

faith behavior by the prevailing party. *Barcume v. City of Flint*, 132 F. Supp. 2d 549, 556 (E.D.

Mich. 2001) (citing *Pontiac Trail Medical Clinic, P.C. v. PaineWebber, Inc.,* 1993 U.S. App.

LEXIS 20280, No. 92-1972, *4 (6th Cir. July 29, 1993)). The term undue means "clearly

connotes behavior that is immoral if not illegal." *Barcume*, 132 F. Supp. 2d at 556 (quoting *A.G.*

*Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403 (9th Cir. 1992)).

In this case, the NFLMC, with the cooperation of the NFLPA and the Arbitrator, denied

Johnson a fair arbitration by: (1) denying him access to information relevant to his grievance; (2)

falsely representing that multiple unverified amendments to the 2015 Policy existed, which non-

existent amendments eliminated Johnson's substantive rights under the 2015 Policy, and (3)

abusing the arbitration process.  The NFLMC denied Johnson express substantive protections under the 2015 Policy regarding the accuracy and validity of his test results, including prohibiting Johnson's Observing Toxicologist from effectively observing the testing process and failing to have a Chief Forensic Toxicologist certify Johnson's test results, as the 2015 Policy required.  Ex. 1 at ¶¶ 46-52, 91-95, 96-99.

Additionally, the NFLMC denied Johnson access to his personal health, medical, and testing records by undue means, which trampled the alleged "neutrality" of the 2015 Policy's Independent Administrator.  Ex. 1 at ¶¶ 78-90.  The NFLMC denied Johnson the testing laboratory protocols, to which Johnson had a right under the 2015 Policy, and falsely stated to the Arbitrator that such documents had been produced.  Ex. 1 at ¶¶ 100-106.

The NFLMC violated the 2015 arbitrator appointment and assignment provisions.  The 2015 Policy requires "no fewer than three but no more than five" arbitrators to hear player appeals.  Ex. 3 at p. 13.  The Policy further requires that the arbitrators, not the NFLMC, designate one of their number to serve as "Notice Arbitrator."  Ex. 3 at p. 13.  By violating these express provisions, Defendants confounded the 2015 Policy's system for the neutral and random assignment of an arbitrator, and, in effect, "cherry picked" the arbitrator to hear Johnson's appeal.  In an effort to conceal its violation, the NFLMC falsely claimed that there was a proper agreement approving such a violation.  Ex. 1 at ¶¶ 137-141.  No such agreement exists.

Together, through numerous and repeated acts of corruption, fraud, and undue means, the NFLMC, assisted by the actions and omissions of the NFLPA, guided the sham arbitration process to produce a favorable result.  Ex. 1 at ¶¶ 201-209.  Johnson attempted to expose this corruption, but his efforts were defeated by more corruption.  The Award should be vacated on grounds that it was procured through corruption, fraud, and undue means.

**B.**     **The Arbitrator Displayed Evident Partiality and Bias and the Award Should be Vacated**

A federal court also is empowered to vacate an arbitration award "where there was evident partiality or corruption" of the arbitrator.  9 U.S.C. § 10(a)(2).  An arbitration award may be overturned if the decision was rendered by an arbitrator with "demonstrated bias." *Apperson*, 879 F.2d at 1353 (citing *Morris v. Werner-Continental, Inc.,* 466 F.2d 1185, 1190 (6th Cir. 1972), *cert. denied*, 411 U.S. 965, 93 S. Ct. 2144 (1973)).  An arbitration is tainted by partiality or corruption where the aggrieved employee "has been denied substantial access to the grievance procedure and has been deprived of the implicit guarantee that the contractual machinery would operate with some minimum levels of integrity."  *Apperson*, 879 F.2d at 1353 (citing *Hines*, 24 U.S. at 571). "The federal courts need not defer to such arbitration awards." *Id.*

The Sixth Circuit's test for "evident partiality" requires a showing that "a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *Nationwide Mut. Ins. Co. v. Home Ins. Co.,* 429 F.3d 640, 645 (6th Cir. 2005).  In order to sustain that burden, "the party asserting evident partiality must establish specific facts that indicate improper motives on the part of the arbitrator."  *Uhl v. Komatsu Forklift Co.,* 512 F.3d 294, 306-307 (6th Cir. 2008) (internal citations omitted).  The standard requires more than an appearance of bias, but less than actual bias. *Hardy Indus. Techs., LLC v. BJB LLC*, 2016 U.S. Dist. LEXIS 174219, *8-9 (N.D. Ohio Dec. 16, 2016) (citing *The Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 329 (6th Cir. 1998)).  "The alleged partiality must be direct, definite, and capable of demonstration and 'the party asserting [it] ... must establish specific facts that indicate improper motives on the part of the arbitrator." *Id.*

In this case, unbeknownst to Johnson, during the arbitration process, the Arbitrator had clear but undisclosed conflicts that should have prevented him from being assigned as an

arbitrator under the 2015 Policy.  Shortly before the NFLMC and NFLPA retained the Arbitrator to hear disputes under the Policy, the National Football League engaged the law firm at which he works to perform lucrative, high-profile services.  Ex. 1 at ¶¶ 166-183.  The Arbitrator also was retained to hear appeals under the wholly separate National Football League Policy and Program on Substances of Abuse demonstrating that this Arbitrator was directly "affiliated" with the National Football League.  Ex. 1 at ¶¶ 167, 180.  These facts, combined with the 2015 Policy provision prohibiting the appointment of arbitrators who are "affiliated" with the National Football League, prove the Arbitrator could not hear the dispute with impartiality.

Additionally, in exercising his arbitral authority, the Arbitrator demonstrated extraordinary bias in favor of the NFLMC with regard to discovery issues, evidentiary issues, and the biased manner in which he conducted the hearing.  The Arbitrator disregarded the pre-hearing discovery provisions of the 2015 Policy.  Ex. 1 at ¶¶ 146-153.  The Arbitrator allowed the NFLMC to disregard his own discovery rulings.  Ex. 1 at ¶¶ 154-156.  The Arbitrator ignored the specific burden shifting paradigm set forth in the 2015 Policy.  Ex. 1 at ¶¶ 157-165.  The Arbitrator also allowed the NFLMC to present substantive evidence (e.g., an alleged agreement to eliminate the Chief Forensic Toxicologist position) through statements by counsel for the NFLMC and refused to require the NFLMC to produce the actual document.  Ex. 1 at ¶¶ 222.

Perhaps most egregiously, after denying Johnson's discovery request for documents concerning his testing history on grounds that the request was "irrelevant," the Arbitrator admitted a summary of that same information into evidence information when offered by the NFLMC – NFLMC Exhibit I.  Astoundingly, the Arbitrator then relied on this same "irrelevant" information, in significant part, to deny Johnson's appeal.  He did this, despite Johnson's

testimony that NFLMC Exhibit I was inaccurate and without requiring the NFLMC to produce documents supporting the information summarized in Exhibit I.  Ex. 1 at ¶¶ 159-162, 217.

The Arbitrator's evident conflicts produced biased and partial decisions from his acceptance to serve as the arbitrator, through his skewed and inconsistent discovery rulings (which he seemed only willing to enforce to Johnson's detriment), and to the issuance of the deeply flawed and unsustainable Award.  Ex. 1 at ¶¶ 210-218.  Because the Arbitrator did not see fit to disclose his conflict-generating affiliation, Johnson was unaware of it until after he issued the Award.  The Award should be vacated on grounds that the Arbitrator was evidently partial to the NFLMC and biased against Johnson.

## C.      The Arbitrator Engaged in Misconduct by Refusing to Hear and Barring Evidence Pertinent and Material to the Dispute

A federal court may vacate an arbitration award "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced."  9 U.S.C. § 10(a)(3).  While arbitrators "are not bound by formal rules of procedure and evidence," an award may be set aside if "a party to arbitration has been denied a fundamentally fair hearing."  *Hardy Indus. Techs., LLC v. BJB LLC*, 2016 U.S. Dist. LEXIS 174219, 17-18 (N.D. Ohio Dec. 16, 2016) (citing *National Post Office Mailhandlers v. United States Postal Serv.*, 751 F.2d 834, 841 (6th Cir. 1985)). "Fundamental fairness" requires notice, an opportunity to present relevant and material evidence and arguments to the arbitrator, and an absence of bias on the part of the arbitrator.  *Hardy Indus. Techs., LLC v. BJB LLC*, 2016 U.S. Dist. LEXIS 174219, *17-18 (N.D. Ohio Dec. 16, 2016) (citing *Louisiana D. Brown 1992 Irrevocable Trust v. Peabody Coal Co.*, No. 99-3322, 2000 U.S. App. LEXIS 1909, * 6 (6th Cir. Feb. 8, 2000)).

"The arbitrator is not bound to hear all of the evidence tendered by the parties; however, he must give each of the parties to the dispute an adequate opportunity to present its evidence and arguments." *Hoteles Condado Beach, La Concha & Convention Center v. Union de Tronquistas Local 901*, 763 F.2d 34, 39 (1st Cir. 1985) (citing *National Post Office, Mailhandlers,* 751 F.2d at 841; *Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.*, 607 F.2d 649, 651 (5th Cir. 1979); and *Bell Aerospace Company Division of Textron, Inc. v. Local 516, International Union, United Automobile Workers of America*, 500 F.2d 921, 923 (2nd Cir. 1974)). The arbitrator must then determine "the truth respecting material matters in controversy, as he believes it to be, based upon a full and fair consideration of the entire evidence and after he has accorded each witness and each piece of documentary evidence, the weight, if any, to which he honestly believes  it to be entitled."  *Hoteles*, 763 F.2d at 39 (citing Elkouri & Elkouri, *How Arbitration Works* 273-74 (3d ed. 1973)).

The 2015 Policy specifically provided Johnson the right to "discovery."  Ex. 3 at pp. 17-18.  In this case, the Arbitrator colluded with the NFLMC and the NFLPA to effectively deny Johnson any meaningful access to relevant information.  By conjuring expansive limitations on the discovery and information to which Johnson had access not set forth in the 2015 Policy, the Arbitrator denied Johnson a full and fair hearing.

After the NFLMC refused to provide Johnson with virtually all relevant discovery he requested, the Arbitrator conducted a conference call to hear argument and issued a ruling denying virtually all of Johnson's relevant discovery requests.  Ex. 1 at ¶¶ 60, 153; Ex. 7. Shortly afterward, the Arbitrator "clarified" his discovery ruling and ordered the NFLMC to produce "testing laboratory 'protocols' referenced in the Policy." Ex. 1 at ¶ 61, 154; Ex. 8.  That same day the NFLMC responded that it had already produced "the protocols of the testing

laboratory."  Ex. 1 at ¶ 155; Ex. 8.  During the hearing, it became clear that the NFLMC had misled the Arbitrator and had not produced the subject protocols.  Ex. 1 at ¶ 156; Ex. 9 at p. 236:12–237:7, 238:13-18.  Despite Johnson's calling this to the Arbitrator's attention, the Arbitrator chose to ignore the NFLMC's fraud and blatant refusal to produce relevant evidence. The Arbitrator's misconduct denied Johnson the ability to challenge the discipline on grounds expressly provided in the 2015 Policy.  Ex. 3 at p. 17.

Additionally, one of Johnson's discovery requests encompassed documents concerning his testing history under the Policy.  Ex. 4 at p. 5-6.  The Arbitrator endorsed the NFLMC's refusal to provide that information, but, when the NFLMC produced and relied on a summary of the same information to attack one of Johnson's central defenses, the Arbitrator admitted it into evidence (NFLMC Exhibit I) over Johnson's objections.  Ex. 1 at ¶¶ 160-162.  The Arbitrator then relied on NFLMC Exhibit I in large part to deny Johnson's appeal.  Ex. 2 at pp. 5-7.

The Arbitrator's rulings on discovery demonstrate a clear intent to limit Johnson's access to relevant information.  He allowed the NFLMC to present information he denied Johnson, allowed the NFLMC to present a summary of that information without authenticating documents, denied Johnson any ability to effectively challenge the information, and then relied on that information to deny Johnson's appeal.  Ex. 1 at ¶¶ 219-226.  The Arbitrator's conduct violated the express terms of the 2015 Policy and denied Johnson a full and fair hearing.

The Award should be vacated on grounds that the Arbitrator engaged in misconduct by refusing to allow Johnson access to information pertinent and material to the dispute, refusing to hear said evidence, selectively determining whether evidence was relevant depending on the party offering it, and prejudicing Johnson's rights under the 2015 Policy.

### D.        The Arbitrator Exceeded His Authority Under the 2015 Policy

A federal court is further authorized to vacate an arbitration award where "the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). "Arbitrators exceed their power when they 'act beyond the material terms of the contract from which they primarily draw their authority, or in contravention of controlling principles of law.'" *Passa v. City of Columbus*, 2008 U.S. Dist. LEXIS 18604 (S.D. Ohio Mar. 11, 2008). The U.S. Supreme Court has articulated a standard for vacatur of awards under 9 U.S.C. § 10(a)(4) that is coterminous with the "essence" test the Court articulated for the vacatur of awards under L.M.R.A §301 in the *Steelworkers* Trilogy.[3]  *See Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671-672, 130 S. Ct. 1758 (2010) (vacatur under 10(a)(4) of the FAA on the ground that the arbitrator "exceeded [his] powers" is appropriate when an arbitrator has strayed from interpretation and application of the agreement and effectively dispensed his own brand of industrial justice); *see also IBEW Local 1985 v. Hoover Co.*, 2006 U.S. Dist. LEXIS 45310 (N.D. Ohio July 5, 2006) (explaining the standard for vacatur under 10(a)(4) by reference to the "essence" test).

The 2015 Policy expressly limits the information to which a player grieving discipline has access *in only two areas* -- information concerning the Policy's "bargaining history" and information concerning "other players." Ex. 3 at p. 18. Otherwise, the 2015 Policy entitles players to "additional discovery" beyond the documents initially provided by the NFLMC. Ex. 3 at p. 17. The Arbitrator exceeded his authority under the 2015 Policy by creating limitations on Johnson's access to information with no foundation in the Policy itself. The arbitrary nature of the Arbitrator's discovery decisions are amplified by his denial of information to Johnson on

---

[3] The Steelworkers Trilogy refers to: *United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 80 S. Ct. 3043 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S. Ct. 1358 (1960); and *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S. Ct. 1347 (1960).

grounds of "irrelevance" and his subsequent decision to accept into the record the same information when offered by the NFLMC.  Ex. 1 at ¶¶ 160-162.  Additionally, nowhere does the 2015 Policy grant an arbitrator the authority to accept statements of counsel, without verification or support, as fact, but the Arbitrator relied on such statements by the NFLMC on multiple occasions to deny Johnson relevant information.  Ex. 1 at ¶¶ 221-223.

Additionally, by disregarding the 2015 Policy's burden shifting paradigm, the Arbitrator disregarded the NFLMC's required initial burden of proof and augmented Johnson's burden in complete derogation of the 2015 Policy.  The 2015 Policy sets forth a specific initial burden that the NFLMC must meet to prove a violation.  Ex. 3 at 16.  This burden requires, in part, that the NFLMC prove the allegedly positive test result was obtained "pursuant to a test authorized under the Policy" and that the test was conducted in accordance with the "protocols of the testing laboratory."  Ex. 3 at 16.  The Arbitrator allowed the NFLMC to satisfy its initial burden without presenting evidence that the subject test was authorized under the Policy and without producing or demonstrating that the testing laboratory followed the requisite protocols.  In short, the Arbitrator exceeded his authority under the 2015 Policy and impermissibly rewrote the specific burden shifting paradigm.

Furthermore, the Arbitrator was aware that his selection to hear Johnson's appeal was not in accordance with the 2015 Policy.  Ex. 1 ¶¶ 111, 138, 240.  Although Johnson requested information concerning the number, identities, and selection of arbitrators under the 2015 Policy, the Arbitrator denied that request.  Knowing that his authority to hear the dispute was in question, the Arbitrator never disclosed any potential conflicts and denied Johnson access to relevant information on that issue and illegitimately exercised authority under the 2015 Policy.

On multiple occasions regarding Johnson's access to information, the acceptance of evidence into the record and the burden shifting paradigm, the Arbitrator exceeded the express terms of the 2015 Policy. These actions significantly prejudiced Johnson and denied him a full and fair adjudication. The Award should be vacated on grounds that the Arbitrator exceeded his authority under the Policy.

## IV.    CONCLUSION

Johnson sought the "system of fair adjudication" and "transparency" expressly guaranteed him by the 2015 Policy. Instead, given the misconduct, deceptions, stonewalling and Policy violations of the NFLMC and the NFLPA, together with the evident bias and misconduct of the Arbitrator, he received a sham proceeding. In light of the systematic denial of relevant information, disregard for express terms of the 2015 Policy, and other grave flaws demonstrated by the record, Johnson respectfully requests that this Court vacate the Award. Johnson also asks the Court to grant him an oral hearing in which he may elaborate upon the terminal infirmities plaguing the Award and allow him discovery to demonstrate further the grounds for this Motion.

Respectfully submitted,

**ZASHIN & RICH CO., L.P.A.**

*s/ Stephen S. Zashin*
**Stephen S. Zashin - OH #0064557**
 ssz@zrlaw.com
**Patrick J. Hoban - OH #0079794**
 pjh@zrlaw.com
**David R. Vance - OH #083842**
 drv@zrlaw.com
Ernst & Young Tower
950 Main Avenue, 4th Floor
Cleveland, OH  44113
Telephone: (216) 696-4441
Facsimile: (216) 696-1618

*Attorneys for Plaintiff/Movant,*
*David Lane Johnson*

**Local Rule 7.1(f) Certification of Case Track and Page Length**

In accordance with Local Rule 7.1(f), Defendant hereby certifies that this matter has yet

to be assigned a track but that this Memorandum in Support adheres to the 20-page limitation set

forth in the Local Rule for administrative, standard, and unassigned cases.

*s/ Stephen S. Zashin*
**Stephen S. Zashin - OH #0064557**
  ssz@zrlaw.com
**Patrick J. Hoban - OH #0079794**
  pjh@zrlaw.com
**David R. Vance - OH #083842**
  drv@zrlaw.com
**ZASHIN & RICH CO., L.P.A.**
Ernst & Young Tower
950 Main Avenue, 4th Floor
Cleveland, OH  44113
Telephone: (216) 696-4441
Facsimile: (216) 696-1618

***Attorneys for Plaintiff/Movant,***
***David Lane Johnson***

**Certificate of Service**

I certify that on January 6, 2017, I electronically filed the forgoing document and served

the same on Defendants/Respondents:

Heather McPhee, Esq.
1133 20th Street NW
Washington, DC  20036
Heather.McPhee@nflpa.com

***Attorney for Defendant/Respondent,***
***The NFLPA***

 and

Kevin Manara, Esq.
345 Park Avenue,
New York, NY  10154
Kevin.Manara@nfl.com

*Attorney for Defendants/Respondents,*
*The NFL and the NFLMC*


                                        *s/ Stephen S. Zashin*
                                        **Stephen S. Zashin - OH #0064557**
                                          ssz@zrlaw.com
                                        **Patrick J. Hoban - OH #0079794**
                                          pjh@zrlaw.com
                                        **David R. Vance - OH #083842**
                                          drv@zrlaw.com
                                        **ZASHIN & RICH CO., L.P.A.**
                                        Ernst & Young Tower
                                        950 Main Avenue, 4th Floor
                                        Cleveland, OH  44113
                                        Telephone: (216) 696-4441
                                        Facsimile: (216) 696-1618

                                        *Attorneys for Plaintiff/Movant,*
                                        *David Lane Johnson*